IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KATHERINE MATSCHINER and KRISTINA MATSCHINER, | ) ) ) | |
| Plaintiffs, | ) ) | 8:07CV435 |
| v. | ) ) ) | |
| ALAN L. LEWIS, HARTFORD LIFE, INC., a Delaware corporation, and HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, a Connecticut corporation, | ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the court on Plaintiffs' Motion for Partial Summary Judgment against Hartford Life & Accident Insurance Company ("Plaintiffs' Motion") (Filing No. 20), Defendants Hartford Life and Hartford Life & Accident Insurance Company's Motion for Summary Judgment against the plaintiffs ("Hartford's Motion") (Filing No. 23), and defendant Lewis's Motion for Summary Judgment against plaintiffs ("Lewis's Motion) (Filing No. 34). Upon reviewing the parties' briefs and applicable law, the court finds that Plaintiffs' Motion should be granted, and both Hartford's and Lewis's Motions should be denied.

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for

summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

**FACTS**

At issue in this case is a dispute over Hartford's distribution of the proceeds from RoJane Lewis's life insurance policy. Plaintiffs Katherine and Kristina Matschiner commenced this action to recover benefits to which they claim they are entitled under an

employee welfare benefit plan through which their mother, RoJane Lewis, obtained life insurance coverage.

RoJane Lewis obtained life insurance through a Group Benefits Plan[1] ("the Plan") offered by her employer, Inacom Corporation, in or around January 1992 (HART000199, Filing No. 26).[2] The Plan is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. On November 12, 1991, RoJane executed a Beneficiary Designation (the "1991 Beneficiary Designation") wherein Alan Lewis, her then-husband of nine months, was to receive 60% of her life insurance benefit and Katherine and Kristina Matschiner were each to receive 20% (HART000105-106, Filing No. 26). On December 12, 1997, RoJane Lewis executed a new Beneficiary Designation ("1997 Beneficiary Designation"), wherein Alan Lewis, her then-husband, was to receive 40% and Katherine and Kristina Matschiner were to each receive 30% (HART000204, Filing No. 26). Defendants, however, were not aware of this later 1997 Beneficiary Designation until June 14, 2007, when Katherine Matschiner called defendants to inform them that her sister had one on file (HART000003, Filing No. 26).

In or around 1994, RoJane suffered from lung cancer that metastasized to her brain (HART000192, Filing No. 26). She underwent a resection of the tumor, radiation, and chemotherapy treatment, which placed the tumor in remission but resulted in extensive

---

[1] Defendants contend, and plaintiffs do not dispute, that the Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Def. Brief at 2, Filing No. 24.)

[2] Filing No. 26 is divided into six parts, four of which are the pertinent Administrative Records to which the court cites. HART000001-HART000049 refers to Exhibit Administrative Record 1(Part 2). HART000050-HART000116 refers to Exhibit Administrative Record 2 (Part 3). HART000117-HART000184 refers to Exhibit Administrative Record 3 (Part 4). HART000185-HART000268 refers to Exhibit Administrative Record 4 (Part 5).

cognitive impairment. *Id.* On November 3, 2000, the Douglas County District Court entered a divorce decree ending RoJane and Alan Lewis's nine-year marriage (HART000037-39, Filing No. 26). The divorce decree was prepared and submitted by Alan Lewis, through his attorney, Samuel J. Turco, Sr. RoJane did not answer, otherwise plead or appear in the divorce case and the divorce decree was entered against her in default. (*See* HART000037, Filing No. 26.) The decree stated, inter alia, "[t]hat each party is awarded their individual savings accounts, cash on hand, cash values of any life insurance policies currently owned by him or her or the cash proceeds received or to be received therefrom and any pension and profit sharing plans that he or she may presently have with his or her employer." (*See* HART000038, Filing No. 26.) The decree recited that there were no children of the marriage, that the decree would become final at the first occurring of 30 days or the death of either party, there was no alimony awarded, and that each party was awarded whatever each had in property or debt (HART000037-39, Filing No. 26). The decree without exception ended any financial obligation either party had to the other and split all assets between them based on their respective present holdings.

Following their divorce, Alan Lewis lost contact with his former wife. Alan Lewis never visited RoJane; his only communication with her following the divorce was one "brief letter." (Affidavit of Katherine Matschiner at 3, Filing No. 38.) Alan Lewis provided no financial support during the last years of her life; instead, her daughters Katherine and Kristina Matschiner provided for her care and expenses. *Id.* Alan Lewis did not attend RoJane's funeral. *Id.* at 4.

RoJane Lewis passed away on April 13, 2005, and her total life insurance benefit at the time of her death was $122,000. (HART000167 & HART000020, Filing No. 26.) Ms.

Lewis's nursing home notified Hartford of her death, and subsequently, Hartford began efforts to locate and contact Katherine and Kristina Matschiner, and Alan Lewis, the individuals RoJane identified as beneficiaries on the 1991 Beneficiary Designation (HART000216 & 136-140, Filing No. 26).

Hartford did not succeed in locating Katherine and Kristina Matschiner, or Alan Lewis until June 2007 (HART000155, 157, & 216, Filing No. 26).  On June 4, 2007, Katherine Matschiner called Hartford in response to a letter Hartford had sent her (HART000003, Filing No. 26).  During that call Katherine Matschiner stated that her sister had a more recent beneficiary designation than the 1991 Designation on file with Hartford (referencing the 1997 Beneficiary Designation).  *Id.*  Hartford requested that she fax them this more recent designation.  *Id.*  Katherine Matschiner also informed Hartford, in a letter dated June 4, 2007, that she had spoken with Alan Lewis and that he intended to waive his right to benefits under the Plan (HART000155, Filing No. 26).  When Hartford contacted him on June 8, 2007, however, he stated that he wished to claim his portion of the benefits (HART00003, 000136, Filing No. 26).  On June 5, 2007, Kristina Matschiner faxed Hartford a copy of Alan and RoJane Lewis's divorce decree (HART000035-36, Filing No. 26). Kathryn Matschiner's last contact with Hartford before the benefit was paid was June 18, 2007.  During that phone call she advised Hartford that she was going to contact an attorney  (HART00002, 00013, Filing No. 26).

On July 11, 2007, Alan Lewis filed a complaint with the Nebraska Department of Insurance ("DOI") because Hartford had not paid him benefits under the policy (HART000211-12, Filing No. 26).  The DOI sent a letter to Hartford on July 13, 2007,

5

requesting a response and explanation as to why Hartford had not paid Alan Lewis (HART000210, Filing No. 26).

On July 18, 2007, Hartford submitted the funds for release in accordance with the 1991 Designation, noting that "PH [Policy Holder Inacom Corporation] is out of business" and "the family has not faxed over the bene[ficiary] designation they indicated they have on file there[f]ore we will continue with the bene[ficiary] designation in the file." (HART000001-002, Filing No. 26.)  Hartford's record indicates that the Administrator acknowledged that the "divorce decree does speak of insurance" and that it was "awarded to each party, however the designation was never changed according to [Hartford's] records." (HART000002, Filing No. 26.)  The administrative record concludes that "Alan has filed a DOI complaint expecting to be paid, therefore we will proceed."  *Id.*

On July 26, 2007, the plaintiffs' attorney sent Hartford a copy of the more recent 1997 Beneficiary Designation, dated December 12, 1997 (HART000010, Filing No. 26). As mentioned above, the 1997 Designation decreased Alan Lewis's designation to 40%, and increased each of the two daughters' benefits to 30% (HART000011, Filing No. 26). In his July 26, 2007, letter to Hartford, the plaintiffs' attorney informed Hartford that its "distribution of proceeds was not in accordance with the directions of the insured." (HART000010, Filing No. 26.)

Plaintiffs Katherine and Kristina Matschiner then filed this civil action in the District Court of Douglas County, Nebraska, on October 5, 2007, naming Hartford Life, Hartford Life & Accident Insurance Company, and Alan Lewis as defendants (Notice of Removal at 2, Filing No. 1).  On November 13, 2007, Hartford moved to have the case removed to the United States District Court for the District of Nebraska.  *Id.*   On July 30, 2008,

plaintiffs Katherine and Kristina Matschiner moved for summary judgment against defendant Hartford Life & Accident Insurance Company (Filing No. 20). On that same day, defendants Hartford Life and Hartford Life & Accident Insurance Company moved for summary judgment against plaintiffs Katherine and Kristina Matschiner (Filing No. 23). Finally, on August 14, 2008, defendant Alan Lewis moved for summary judgment against plaintiffs Katherine and Kristina Matschiner (Filing No. 34).

## DISCUSSION

For the reasons stated below, this court grants Plaintiffs' Motion and reverses the Administrator's decision to distribute the proceeds in accordance with the 1991 Designation; the court concurrently denies Hartford's Motion. Finally, the court denies Lewis's Motion. Plaintiffs, however, have failed to provide any evidence demonstrating that they are the sole beneficiaries of the estate of RoJane Lewis, or in the alternative, that in the event that one beneficiary's interest is divested, the Plan requires redistribution to the remaining beneficiaries of the Plan. Consequently, the court orders a hearing wherein the parties will have the opportunity to present evidence and arguments concerning to whom and according to what terms this court should order defendants to distribute Alan Lewis's now divested beneficiary interest.

### *Administrator's Decision to Distribute Benefits*

While this court acknowledges that it must afford Hartford a certain degree of discretion in its determination of whether to deny plaintiffs the full benefits they request, the court finds that Hartford has abused that discretion. The court, therefore, reverses Hartford's decision to distribute the proceeds in accordance with the 1991 Designation and

will consider awarding the benefits to Katherine and Kristina Matschiner in full or, in the alternative, a redistribution of these benefits to the estate of RoJane Lewis.

"In reviewing a plan administrator's benefits decision, a threshold question is whether the plan gives the decision-maker discretionary authority to rule on benefit claims. If it does, then the plan administrator or insurer must make the initial decision, which the court then reviews under a deferential standard of review." *Equitable Life Assur. Soc. of U.S. v. Crysler*, 66 F.3d 944, 949 (8th Cir. 1995); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). In the present case, the Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Thus, because the Plan grants "the administrator or fiduciary *discretionary authority* to determine eligibility for benefits, [the] *deferential standard* of review [is] appropriate." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008).

This administrative discretion, however, is not an unbridled license for an administrator to award benefits however he or she sees fit.[3] Instead, "ERISA imposes higher-than-marketplace quality standards on insurers," requiring the administrator to

---

[3] To the contrary, the Supreme Court has likened the administrator's discretionary duty to that of a trustee of a common-law trust.  See *Metropolitan Life Ins. Co.*, 128 S. Ct. at 2347 ("In "determining the appropriate standard of review, a court should be guided by principles of trust law; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act ( i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).") (internal quotations omitted).

8

"'discharge [his] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan."[4]  *Id.* at 2350 (quoting § 1104(a)(1)). While courts review an administrator's discretionary determination of benefits "for abuse . . . of his discretion" (*King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 998 -999 (8th Cir. 2005) (internal quotations omitted)), the review court must ensure that the administrator has satisfied his duty to "assemble an adequate claims record and . . . adequately explain [his] decision at the administrative level." *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001).

Thus, an "administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable." *King*, 414 F.3d at 999.  The administrator's discretionary determinations, however, "are reversible if they are without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hill v. AT&T Corp.*, 125 F.3d 646, 650. "Review for abuse of discretion also ensures that an administrator's decision is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999 (internal quotations omitted) ("Because ERISA requires employee benefit plans to 'provide adequate notice' to any participant or beneficiary whose claim is denied, 'setting forth the specific reasons for such denial' in a manner 'calculated to be understood by the participant,'" we have held that plan trustees must 'briefly state the facts of the case and

---

[4] The Supreme Court continued, reasoning that this fiduciary duty imposed on an administrator "simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials, and it supplements marketplace and regulatory controls with judicial review of individual claim denials." *Metropolitan Life Ins. Co.*, 128 S. Ct. at 2350 (internal citations omitted).

9

the rationale for their decision.'" *Id.* (quoting 29 U.S.C. § 1133)). "In sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." *Id.* at 1000.

Upon review of the administrative record in this matter, the court concludes that Hartford's decision should be reversed as it "without reason, unsupported by substantial evidence, [and] erroneous as a matter of law." *Hill,* 125 F.3d 650. Hartford's decision to distribute the proceeds based on the 1991 Designation was not a reasonable interpretation of the substantial evidence presented to Hartford at the time it decided to proceed with the distribution. Further, and more importantly, the court finds that Hartford has failed to "discharge [its] duties . . . solely in the interests of the participants and beneficiaries of the plan," but rather, has acted in haste and neglected its fiduciary duty to act in the best interests of the Plan's beneficiaries. *Metropolitan Life Ins. Co.,* 128 S. Ct. at 2350 (internal quotations omitted).

Hartford abused its administrative discretion when it made its decision to distribute the funds on July 18, 2007, without adequately considering the administrative record in its entirety. At the time the Administrator made his decision regarding the distribution, the record reflects Hartford knew the plaintiffs claimed a subsequent beneficiary designation and were seeking an attorney to pursue their claims. As a result, the record does not adequately explain Hartford's decision at the administrative level.

Despite the fact that Hartford was on notice that the plaintiffs were seeking an attorney to presumably contest the continued validity of the 1991 Designation, and that

there was a potentially valid subsequent beneficiary designation, Hartford distributed the funds. Their record reflects that on June 6, 2007, Katherine Matschiner informed Hartford of the existence of the later designation. Their records also reflect that the policy holder, Inacom Corporation, was no longer in business. It should be no surprise to find a later valid beneficiary designation. Consequently, Hartford requested Katherine Matschiner to fax Hartford the more recent designation, and Katherine agreed that she would. Then, on July 18, 2007, before Hartford had received the later designation from Katherine Matschiner, Hartford proceeded to distribute the funds in accordance with the 1991 Designation, noting only that "to date the family has not faxed over the bene[ficiary] designation they indicated they have on file there[f]ore we will continue with the bene[ficiary] designation in the file."

The record shows no indication that Hartford attempted to contact Katherine Matschiner to inform her that Hartford would proceed in accordance with the 1991 Designation since it had not yet received the later designation within the unarticulated 30-day deadline. Further, there is no evidence in the record to indicate that Hartford put Katherine Matschiner on notice that it was Hartford's policy to proceed with a designation once a beneficiary has failed to send in the deceased's more recent designation within one month's time. Hartford's actions in this instance have failed to "se[t] forth the specific reasons for its denial in a manner calculated to be understood by the participant. . . ." *King 414 F.3d at 1000*. Instead, the record only indicates that Hartford acted abruptly, most probably in response to a letter from the DOI requesting that Hartford respond with an explanation as to why it had not distributed the proceeds in accordance with the 1991 Designation. The fact that one beneficiary has filed a complaint with the DOI does not give

rise to substantial evidence that the proceeds should be awarded in that beneficiary's favor–especially when Hartford was on notice there was a legitimate dispute between the beneficiaries. Instead, Hartford's cursory conclusion that "Alan has filed a DOI complaint expecting to be paid[;] therefore we will proceed" is without reason, is unsupported by substantial evidence in the record, and is irresponsible.

Additionally, at the time that Hartford made its decision, Hartford had in hand a divorce decree that arguably vitiated the 1991 Designation. The only evidence in the administrative record to indicate that Hartford considered the divorce decree is the administrative record entry on July 18, 2007, when Hartford noted that the "divorce decree does speak of insurance[, and it] is awarded to each party." Hartford dismissed the divorce decree with seemingly no justification. Hartford's explanation for dispensing with the divorce decree is Hartford's statement that "the [1991] designation was never changed according to [Hartford's] records." The administrative record is void of any explanation as to *why* and *how* Hartford interpreted the divorce decree to not divest Alan Lewis of his beneficiary interest.

While Hartford, as an administrator, is not required to apply federal common law directly in making beneficiary determinations, making an administrative determination while blatantly disregarding a divorce decree is an unreasonable decision that constitutes an abuse of Hartford's administrative discretion. Further, "under federal common law, a settlement entered into pursuant to a judgment of dissolution may divest a former spouse of beneficiary rights to life insurance proceeds, even when the beneficiary designation has not been changed before the death of the insured." *Mohamed v. Kerr*, 53 F.3d 911, 914 (8th Cir. 1995). Consequently, as a matter of law, divorce decrees alone can serve to

divest former spouses of their beneficiary interests. RoJane Lewis's failure to properly file an updated beneficiary designation, therefore, does not discharge Hartford from its fiduciary duty to ensure that its distribution of her proceeds are in accordance with the substantial evidence on the record before it. Hartford owes the Plan's beneficiaries a fiduciary duty to fully consider any divorce decrees that may serve to divest an individual beneficiary of his benefits under the Plan. Consequently this court finds that Hartford's administrative decision is not supported by substantial evidence because Hartford did not adequately consider the divorce decree.

Although Hartford's decision "is indeed a discretionary decision, [it] is nevertheless a misapplication of federal common law in this Circuit and thus erroneous as a matter of law." *Hill*, 125 F.3d 650. Additionally, Hartford has failed to "se[t] forth the specific reasons for its denial in a manner calculated to be understood by the participant." *King* 414 F.3d at 1000. Finally, Hartford's decision breaches the higher-than-marketplace quality standard required by ERISA. Hartford's decision to distribute the proceeds in accordance with the 1991 Designation, therefore, is reversed.

### *Distribution Determination*

In reversing Hartford's administrative determination, this court must apply federal common law to determine whether the divorce decree does in fact, as plaintiffs insist, divest Alan Lewis of his beneficiary interest in the proceeds. *See Hill*, 125 F.3d at 648 ("The issue of whether and how a divorce decree may divest a person of beneficiary rights is not explicitly considered in ERISA and thus is a question of federal common law."). The court finds that the last articulation of the property interests of RoJane and Alan Lewis is found in the divorce decree. The decree was entered after any of the alleged beneficiary

designations. If the decree divested Alan Lewis of his beneficial interests in the policy, then any questions concerning the validity of the 1997 designation are moot. Under federal common law, "[t]he language of any such provision in a dissolution decree, while not required to include the term 'beneficiary,' nevertheless must be sufficiently specific to convey the intent of the parties to divest one or the other, or both, of a beneficiary interest." *Id*; *Mohamed*, 53 F.3d at 915 ("[F]ederal common law . . . makes it clear that the law does not require that the word 'beneficiary' appear in the language of the agreement in order for a beneficiary interest to be divested.").

The court finds that the language of the Lewis divorce decree is "sufficiently specific" so as to divest both Alan and RoJane Lewis of any beneficiary interest they previously may have had in the proceeds from the each other's life insurance policies. Upon review of the record, the court has determined that the Lewis divorce decree is quite similar to the divorce decree the Eighth Circuit Court of Appeals considered in *Mohamed*. In *Mohamed*, the Eighth Circuit held that the language in a divorce decree stating "[t]hat each of the parties shall be awarded full right, title, interest and equity in . . . life insurance policies with any cash value thereon" served to divest a former spouse of her beneficiary interest in the deceased's policy. *Mohamed*, 53 F.3d at 913. In the present case, the Lewis divorce decree states "[t]hat each party is awarded their individual savings accounts, cash on hand, cash values of any life insurance policies currently owned by him or her or the cash proceeds received or to be received therefrom and any pension and profit sharing plans that he or she may presently have with his or her employer."

The court concludes that the *Mohamed* divorce decree language consisting of "life insurance policies with any cash value thereon" is strikingly similar to "cash values of any

14

life insurance policies currently owned by him or her or the cash proceeds received or to be received therefrom[,]" and thus, is "sufficiently specific" to convey the parties' intent to terminate their respective interests in each other's policies. In fact, the Lewis divorce decree is so specific that if the court were to "construe the agreement as [the defendant Hartford] suggests, then it [would do] nothing but possibly give [Ms. Lewis] a right to physical possession of [her own] life insurance policy–a right so meaningless as not to be a right at all–and the ability to change the beneficiary–a right [s]he had regardless of the divorce." *Id.* at 916. Consequently, in order to avoid a reading of the decree that would render its language utterly meaningless, the court finds that the language in the Lewis divorce decree successfully terminated Alan Lewis's beneficiary interest in the proceeds Hartford distributed from RoJane Lewis's policy.

Furthermore, as the Eighth Circuit found in *Mohamed,* this court concludes that "the facts surrounding the [Lewis] divorce are especially compelling for our conclusion that the agreement evidenced a mutual intent to divest." *Id.* In considering the facts surrounding the Mohamed divorce, the Eighth Circuit noted that Mohamed's former spouse had been diagnosed with a terminal illness, but upon filing for divorce, "Mohamed could not get away fast enough, and she never looked back . . . . [T]he couple had no children together. Once the divorce was final, all ties between Mohamed and Kerr were severed. There is no indication in the record that Mohamed was responsible, after the divorce, for expenses associated with Kerr's care, medical treatment, or funeral, for which life insurance proceeds might be needed." *Id.* Similarly in this case, the Lewises had no children together, and Alan Lewis completely abandoned RoJane after she was diagnosed with a terminal illness. Not once did Alan Lewis visit his former wife, and he contributed absolutely nothing

15

(financially or emotionally) to her care during her dying years. He did not even attend her funeral. As the Eighth Circuit concluded in *Mohamed*, these circumstances evince an intent on the part of Alan Lewis to fully separate himself from RoJane. When considered in the context of Alan and RoJane Lewis's divorce, the specific language in the Lewis divorce decree can have no other meaning but to fully and completely sever all ties between the two parties–a severance that certainly includes the cash proceeds to be paid from the parties' life insurance policies.

Accordingly, the court finds that any beneficial interest by Alan Lewis in the proceeds were terminated with the divorce decree.

### *Alan Lewis's Motion*

The court further concludes that Alan Lewis's Motion should be denied. While Alan Lewis's Motion does request relief in the form of summary judgment, he has failed to satisfy his "initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 569(c)). Alan Lewis's Motion does not indicate the existence of any evidence on file that demonstrates "the absence of a genuine issue of material fact." Further, Alan Lewis has not met his burden as the moving party since he has offered no argument that he is entitled to judgment as a matter of law. *See Cordry*, 445 F.3d at 1109. Instead, Alan Lewis avers that the only purpose of the divorce decree was to "divide the cash and cash equivalents, not to change a beneficiary designation." (Lewis Motion at 1, Filing No. 34.) This contrary construction of the divorce decree does nothing to

demonstrate the "absence of a genuine issue of material fact"–nor does it establish that Alan Lewis is entitled to judgment as a matter of law.

Alan Lewis's Motion for Summary Judgment (Filing No. 34), is denied.

## CONCLUSION

For the aforementioned reasons, the court concludes that the Plaintiffs' Motion is granted, Hartford's Motion is denied, and Lewis's Motion is denied.[5]  When a divorce decree is held to be an effective waiver of an ex-spouse's beneficiary interest in an ERISA plan, it is proper for the court to redistribute the divested interest to the deceased's estate. *See* Estate of Altobelli v. Int'l Bus. Machs. Corp., 77 F.3d 78, 82 (4th Cir. 1996) ("Because we hold that [the divorce decree's] waiver is effective, we affirm the district court's order awarding the pension benefits to [the deceased's] estate.").  Plaintiffs, however, have not presented any evidence to indicate that the divested interest ought to be distributed to them in place of RoJane Lewis's Estate.  Thus, the court will hold an evidentiary hearing in which the parties will have the opportunity to present evidence and arguments addressing the question of how Alan Lewis's $73,200 divested beneficiary interest should be distributed.  Accordingly,

---

[5] In a letter dated December 9, 2008, defendants' counsel called to the court's attention a case currently pending before the Supreme Court, *Kennedy v. Plan Administrator for DuPont Savings* (07-636). Counsel averred that "*Kennedy* involves issues germane to those before the Court in this case." The court is also in receipt of plaintiffs' letter, dated December 10, 2008, in which plaintiffs contend that "[t]he issue in *Kennedy* is not applicable to [the] case" before this court." This court has reviewed the case and the matter now pending before the Supreme Court and has determined that the question the Supreme Court has asked the parties to brief in *Kennedy*, specifically: "Whether 29 U.S.C. § 1104(a)(1)(D), mandating administration of a plan in accordance with plan documents, required that the distribution in question be made to Liv Kennedy, even on the assumption that a waiver of her interest was not otherwise subject to statutory bar." *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 497 F.3d 426 (5th Cir. 2007), *cert. granted,* 77 USLW 3265 (U.S. Oct. 28, 2008) (No. 07-636), is not applicable to the present case because 29 U.S.C. § 1104(a)(1)(D) applies to *pension* plans, and the plan in dispute in the present matter is statutorily defined as a *welfare* plan.  *See* 29 U.S.C. § 1002(1) (defining "welfare plan" as one providing "medical . . . benefits, or benefits in the event of sickness, accident, disability, death or unemployment" for plan participants or their beneficiaries "through the purchase of insurance or otherwise*"*).

IT IS ORDERED:

1. Plaintiffs' Motion for Summary Judgment, Filing No. 20, is granted.

2. Hartford's administrative decision to distribute RoJane Lewis's proceeds in accordance with the 1991 Designation on file is reversed.

3. Hartford Life and Hartford Life & Accident Insurance Company's Motion for Summary Judgment, Filing No. 23, is denied.

4. Alan Lewis's Motion for Summary Judgment, Filing No. 34, is denied.

5. A hearing is scheduled for **January 16, 2009, at 3:00 p.m.** before the undersigned in Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, Nebraska. Counsel for the parties will be given the opportunity to present arguments and evidence regarding the redistribution of Alan Lewis's now divested $73,200 beneficiary interest.

DATED this 6th day of January, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge